## SKOWHEGAN SAV. BANK et al. v. SECURITIES AND EXCHANGE COMMISSION et al.

### No. 11300.

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 27, 1952.

Decided Dec. 22, 1952.

George S. Van Schaick, Rochester, N. Y., pro hac vice, by special leave of Court, with whom Martin A. Meyer, Jr., and Harry E. Proctor, Washington, D. C., were on the brief, for petitioners.

Roger S. Foster, General Counsel, Securities and Exchange Commission, Washington, D. C., with whom Alexander Cohen, Washington, D. C., was on the brief, for respondent.

Leonard A. Pierce, Portland, Me., with whom Charles B. Rugg, Boston, Mass., and Everett H. Maxcy, Augusta, Me., were on the brief, for intervenor.

Before CLARK, PRETTYMAN and WASHINGTON, Circuit Judges.

PRETTYMAN, Circuit Judge.

This is a petition to review two orders of the Securities and Exchange Commission.

By an agreement made in 1912 the Portland Railroad Company leased all of its property to the predecessor of the Central Maine Power Company. The lessee Power Company agreed, among other things, to pay an annual rental equivalent to interest on the debt of the Railroad plus a dividend of $5.00 per share on the Railroad's stock, and to deliver to the Railroad at the termination of the lease, in condition not inferior to that existing at the date of the lease, all of the property leased. By 1944 the Power Company owned approximately 36 per cent of the Railroad's outstanding bonds and 49 per cent of its stock. In that year, pursuant to Section 11(e) of the Public Utility Holding Company Act of 1935,[1] the Power Company filed with the Commission a plan to divest itself of the Railroad in compliance with Section 11(b) of the Act. The plan contemplated, among other things, the termination of the lease, the sale of the Railroad's assets, the redemption of the bonds held by persons other than the Power Company, and the distribution of a liquidating dividend of $110.00 per share to all stockholders of the Railroad other than the Power Company. The Power Company was to supply the funds necessary to meet those terms. The plan was detailed and comprehensive, but in view of our disposition of the case we need not here describe it further.

A hearing was had by the Commission on the proposed plan. Six savings banks in the State of Maine, including our present petitioners, participated in the hearing as stockholders of the Railroad. No one questioned the necessity of divestment under the Act. Their representative stated that they felt that the price of $110.00 a share was inadequate, that they did not wish to obstruct the liquidation of the Company if liquidation was in the public interest, but that they insisted upon adequate compensation for the vested rights which they held under the lease. He further stated that his clients had no objection to the proposed

1. 49 Stat. 822, 15 U.S.C.A. § 79k(e).

treatment of the bonds. On December 19, 1944, the Commission handed down its findings, opinion and order, in which it found the plan to be necessary to effectuate the provisions of the Act and fair and equitable to the persons affected. It accordingly approved the plan.

In respect to the proposed payment to the Railroad's stockholders, the Commission made a computation. It discounted the $5.00 per share dividend for 66 years (the then remaining life of the lease) at a 4 per cent rate, arriving at a then-present value of about $116.00 per share. It then discounted that figure on account of certain ambiguities in the lease which affected the guaranty of the dividend. It thus arrived at a figure of $110.00 per share as a fair and equitable figure.

In respect to the claimed value to the stockholders of the reversion of a going transportation system at the end of the lease, the Commission pointed out that annual net earnings forseeable in the year 2011 (the expiration of the lease) in an amount equal to current earnings in 1911 (the execution of the lease), or even a much larger amount, had a present value of only a few cents a share. It therefore considered this reversionary right to be of insignificant value.

Having made these findings the Commission observed: "In addition it may be noted that any stockholders dissenting from the proposed plan will have a right, pursuant to Maine statute, to have their stock appraised." In its report to the stockholders pursuant to Section 11(g) of the Act, the Commission included this statement:

"The security holders of Portland have the right under Maine laws to have their stock appraised and receive an amount for their stock based on such appraisal. Although this Commission has found the plan fair and equitable, whether or not any security holder should vote in favor of the plan or choose to exercise his rights under the appraisal statute or by other means should be determined by his independent judgment."

Some stockholders, including petitioners, filed a bill in equity in the Supreme Judicial Court of Maine, in which they sought not an appraisal of their stock under the Maine appraisal statute but to have the entire transaction set aside. Other stockholders filed in the United States Court of Appeals for the First Circuit a petition for review of the order of the Commission under Section 24(a) of the Act, 15 U.S.C.A. § 79x(a), but that action was later dismissed on motion of those petitioners. After lengthy litigation in the Maine courts the appellate court held,[2] upon authority of Schwabacher v. United States,[3] that the state courts had no jurisdiction in respect of matters which the Commission had found fair and equitable and so had no jurisdiction to reexamine, among other things, the sum to be paid for the Railroad stock. Petition for *certiorari* was denied.[4]

Thereafter, on May 1, 1950, our present petitioners sought reconsideration by the Commission of its original report and order of December 19, 1944. On November 28, 1951, the Commission handed down its decision on that petition. It considered the various contentions of the petitioners at some length and denied the petition. It then said:

"After careful consideration, we find nothing in the arguments presented, the facts alleged and the record heretofore made before us which would cause us to find that the $110 per share approved by us for the public holders of Portland's common stock was not fair and equitable, and we are satisfied that our Order of December 19, 1944 in this matter should not be disturbed. We have examined all other contentions of petitioners contained in their brief and find them to be without merit."

The present petition in this court is for review of the order of November 28, 1951,

2. Auburn Sav. Bank v. Portland R. R. Co., 1949, 144 Me. 74, 65 A.2d 17.

3. 1948, 334 U.S. 182, 68 S.Ct. 958, 92 L. Ed. 1305.

4. Auburn Savings Bank v. Portland Railroad Co., 1949, 338 U.S. 831, 70 S.Ct. 74, 94 L.Ed. 506.

and also of the order of December 19, 1944.

The sixty days after entry of the 1944 order, allowed by the statute (Section 24 (a) ) for the filing of a petition for review, has of course long since expired. Petitioners argue, however, that the 1951 order reopened the matter sufficiently to give them another sixty days within which to file the petition. We think that the 1951 order cannot be so construed.

Petitioners insist that the finding of the Commission in 1944 in respect to the $110.00 payment per share was conditioned upon the right of appraisal in the Maine courts. They argue that therefore, when the Commission in 1951 affirmed the payment without the condition, it amended the 1944 order. We do not read the 1944 finding as a conditional finding. The Commission made a careful computation and specifically found $110.00 to be the fair and equitable amount to be paid the stockholders. Its reference to the Maine appraisal statute was in the nature of an advisory note. That any such right of appraisal may have been negated or placed in doubt by subsequent court decisions did not create invalidity in the finding of the fair and equitable value. In its 1951 opinion the Commission did no more than examine with care the petitioners' contentions of injustice in the 1944 order. As we have noted, a petition to review that order was filed in the First Circuit and then voluntarily dismissed. Petitioners had their opportunity, in due time, to test the order in a federal court. The plan approved by the Commission in 1944 has long since been consummated, all other shareholders of the Railroad have been paid, and the business of the Railroad has ceased.

The 1944 order is not now appealable in and of itself. The petition for reconsideration, and its denial, even after extended discussion, could not serve to enlarge the statutory period for appeal. The denial of reconsideration is not in and of itself appealable under the statute. Even if we thought we had a measure of authority in respect to review of a denial of reconsideration involving an alleged abuse of discretion, we would not exercise it in this case. The composite of the circumstances, the length of the elapsed time, the course followed at the critical time in regard to federal court review, the absence of applications for stay at any point, the completion of the plan, negate any such proposal; indeed petitioners seem not to claim any abuse of discretion.

The petition for review is

Dismissed.