## DANIELSON v. CIVIL AERONAUTICS BOARD et al.

### No. 197, Docket 22488.

United States Court of Appeals, Second Circuit.

Argued March 13, 1953.

Decided May 8, 1953.

Edward P. Hodges, Acting Asst. Atty. Gen., Ralph S. Spritzer, Special Asst. to the Atty. Gen., John H. Wanner, Associate General Counsel, Washington, D. C., Emory T. Nunneley, Jr., General Counsel, Washington, D. C., James L. Highsaw, Jr., Chief, Litigation and Research Division, Washington, D. C., Charles R. Esherick, Civil Aeronautics Board, Washington, D. C., for respondents.

Louis H. Levin, New York City, for petitioner.

Before AUGUSTUS N. HAND, CHASE and CLARK, Circuit Judges.

CHASE, Circuit Judge.

This is a petition to review an order of the Civil Aeronautics Board arising out of the North Atlantic Route Transfer Case, in which the Board authorized Pan American Airlines, Inc. (PAA) to acquire the assets and certificate of convenience and necessity of American Overseas Airlines, Inc. (AOA). By a supplemental order dated September 22, 1950, the Board imposed so-called employee protective provisions as a condition to its approval of the merger, which provisions required PAA to compensate those employees who were adversely affected by the merger; and this petition presents another phase of the dispute between the adversely affected employees and PAA as to the latter's obligations under the order. Other aspects of this same subject were before us in O'Donnell v. Pan American Airways, 2 Cir., 200 F.2d 929, and Kent v. Civil Aeronautics Board, 2 Cir., 204 F.2d 263.

The secretary of the Association of Air Navigators, representative of the AOA navigators, submitted a petition to the Board requesting it to find (1) that nine former AOA navigators who had been refused dismissal allowances by PAA were entitled to such allowances under the order of September 22, 1950; and (2) that in computing the dismissal allowances admittedly due to thirty other former AOA navigators PAA was not entitled to deduct all overtime pay which the navigators earned during the period for which dismissal allowances were payable. The Board ruled against both of the Association's contentions in an order dated July 31, 1952, and this petition was brought to review that order.

The order of September 22, 1950 provided that, with certain exceptions, PAA should take into its employ at their existing status all the employees on the payroll of AOA as of July 11, 1950, including those on furlough at that date. The order further provided that PAA was to pay an allowance to any such employee who was afterwards reduced in status or dismissed as a direct result of the acquisition. The allowance was to be computed on a formula basis and was calculated to save harmless any employee who suffered financial detriment because of the acquisition from the time it took place until July 2, 1952. Any employee who was dismissed as a direct result of the transfer and acquisition was to be paid a monthly dismissal allowance equal to his average monthly pay for the twelve months preceding his dismissal, or for such portion thereof that he had been employed. The payments were to be made during the parts of the protective period that he remained unemployed, provided he used rea-

sonable diligence in locating and accepting other employment the duties of which he was qualified to perform. It was also provided that if a dismissed employee obtained other employment his dismissal allowance "shall be reduced to the extent that his combined monthly earnings in such other employment * * * and his dismissal allowance exceed the amount upon which his dismissal allowance is based."

If certain disputes, not now pertinent, should occur provision was made that they be referred to a "special adjudicator." And it was further provided that "In the event that any dispute or controversy, other than matters to be referred to the special adjudicator, arises with respect to the protection provided herein, which cannot be settled by the carrier and the employee, or his authorized representative, within thirty days after the controversy arises, it may be referred, by either party, to an arbitration committee for consideration and determination * * *"

At the time of the acquisition PAA did not employ navigators who were not also pilots, but AOA did. There were no positions available in the PAA organization for such AOA navigators, and when the acquisition was completed on September 26, 1950 they were dismissed. Following that, thirty-nine of them filed claims for dismissal allowances and thirty were paid. PAA refused to pay the remaining nine on the ground that they had been on furlough since before September 1950 and had not shown that it was the merger which deprived them of employment. In the order now here for review, the Board ruled that although the nine furloughed navigators were entitled to the protective benefits to the same extent as all other employees, they must first establish that they were adversely affected by the acquisition and that this disputed fact must be established by the arbitration procedure provided in the earlier order before dismissal allowances could be ordered paid to them.

That the Board correctly construed its order of September 22, 1950 in this respect seems abundantly clear. When, if ever, the furloughed navigators would have resumed active service with AOA had there been

no merger is something which requires determination as a matter of fact. It is a fact as to which the parties have a substantial dispute and which they have been unable to resolve; and the Board has provided an adequate method for its resolution that is still available, so far as we can now tell, to the nine claimants. Their rights were only what the order of September 22, 1950 gave them; and to require them to establish that they had been adversely affected, there being a dispute as to that based on substantial grounds, was not only a reasonable interpretation of the order but, seemingly, a necessary one to prevent discrimination which would give them a preferred position relative to that of other adversely affected employees.

 The Board's reasonable interpretation of its own order is entitled to great weight and, as it is not clearly erroneous, is controlling. Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 65 S.Ct. 1215, 89 L.Ed. 1700.

 For the same reason we accept the dismissal allowances which were paid the thirty AOA navigators whose claims were recognized by PAA as established in fact as having been correctly computed, by deducting from their base period pay all of their actual earnings in other employment during the compensation period including overtime pay. The petitioner insists that overtime pay was improperly treated as "earnings" in computing the net dismissal allowances.

In providing for the payment of allowances to employees, the order did not undertake to assure each employee as good a job as he would have had had the acquisition not taken place. It did not provide for them a job in which they could earn as much as before in the same time, nor did it provide any job at all. The order undertook to secure to each dismissed employee during the protective period a monthly income equal to that which he had received prior to the acquisition; and this undertaking is achieved by offsetting all income earned in another position, whether earned through overtime work or not, against the amount on which his dis-

missal allowance is based. Consequently, the Board's ruling that overtime earnings are included within the meaning of "combined monthly earnings," particularly since it is an interpretation of its own order, must be upheld.

Order affirmed.