Truman **OUTLAND** et al., Petitioners

v.

**CIVIL AERONAUTICS BOARD,**
Respondent

**Delta Airlines, Inc., Air Line Pilots Association, International, Intervenors.**

No. 15489.

United States Court of Appeals
District of Columbia Circuit.

Argued Sept. 13, 1960.

Decided Oct. 27, 1960.

Mr. Philip F. Herrick, Washington, D. C., with whom Messrs. Merrill Armour and John B. Kneipple, Washington, D. C., were on the brief, for petitioners.

Mr. Robert L. Toomey, Attorney, Civil Aeronautics Board, for respondent. Messrs. Franklin M. Stone, General Counsel, Civil Aeronautics Board, John H. Wanner, Deputy General Counsel, Civil Aeronautics Board, O. D. Ozment, Associate General Counsel, Civil Aeronautics Board, Abbott A. Leban, Attorney, Civil Aeronautics Board, and Richard A. Solomon, Attorney, Department of Justice, were on the brief, for respondent.

Mr. R. Emmett Kerrigan, and Mr. Bernard Marcus, of Deutsch, Kerrigan and Styles, New Orleans, La., Mr. Richard S. Maurer, Atlanta, Ga., with whom Messrs. Frank F. Rox and James W. Callison, Atlanta, Ga., were on the brief, for intervenor Delta Airlines, Inc. Mr. Joseph J. O'Connell, of Chapman, Walsh & O'Connell, Washington, D. C., also entered an appearance for intervenor Delta Airlines, Inc.

Messrs. Stanley B. Frosh, Washington, D. C., and F. Harold Bennett, Chicago, Ill., were on the brief for intervenor Air Line Pilots Association, International.

Before WASHINGTON, BASTIAN and BURGER, Circuit Judges.

BURGER, Circuit Judge.

Petitioners, who are pilots now employed by Delta Airlines, seek review of an order of the Civil Aeronautics Board dated August 31, 1959, which dismissed without hearing petition "for Revision of and Protest Against Integrated Seniority List of Delta-C & S Air Lines, Inc." and of a later order dated November 2, 1959, denying reconsideration.

Pursuant to the Board's directive, the 177 pilots of C. & S. designated two representatives and the 294 pilots of Delta designated two representatives to negotiate a revised and integrated seniority list following union procedures of Air Line Pilots Association of which all the pilots were members. It should be noted that this was equal rather than proportional representation in the bargaining process. ALPA was the sole collective bargaining agent of the pilots of each of these airlines under contracts then in force.

The "Integrated Seniority List" is one of the incidents of the 1953 merger of Delta Airlines with Chicago and Southern Air Lines, Inc. Upon approval of this merger the Board directed integration of the employee seniority lists "in a fair and equitable manner, including \* \* \* agreement through collective bargaining \* \* \*." Additionally a "displacement allowance" was ordered to prevent reduction in wages of any employees resulting from the negotiated revision and integration of the surviving airline's seniority list. The Board retained jurisdiction to make "such amendments and modifications \* \* \* as circumstances may require." [1]

The two Delta pilot representatives and the two C. & S. pilot representatives negotiated and ultimately agreed upon an integrated seniority list. This was in turn approved by the Master Executive Councils [2] of the Delta and C. & S. ALPA

1. Delta-Chicago and Southern Merger Case, 16 C.A.B. 647, 662–3, 668 (1952).

2. Later four of the six signatory members of the C. & S. Master Executive Council desired to withdraw their approval of the agreement. Delta representatives also later challenged the list.

locals, and served on all interested persons. Procedures were agreed upon for individual protests to be considered by a Seniority Board of the four pilot representatives and a fifth member selected by the National Mediation Board. Subject to such changes as might be made under the protest procedures, the list was declared to be binding on all pilots and on the ALPA, the latter being designated to "negotiate said integrated List into a single employment agreement with the surviving merged carrier."

Individual protests were filed by 141 pilots, about one-third of them directed to alleged improper listing within the framework of the agreement and two-thirds to the basic manner in which the list was compiled.

During consideration of the protests the Seniority Board recessed to allow the groups to reconcile the asserted differences on the list. This failed to produce agreement and the Seniority Board reconvened and dismissed all the protests. The four pilot representatives agreed to dismiss the protests for the stated reason that any attempt to make changes would in all likelihood create more injustices. The neutral Mediation Board representative reached the same conclusion on different grounds; he regarded most of the protests as not within the scope of the initial agreement and the others as without merit. The 141 individual protestants were not allowed to present evidence or oral arguments; the Board's order did not require formalized hearings and the Seniority Board agreement did not so require. Subsequently the integrated seniority list was incorporated into the regular contract between ALPA and Delta; since 1953 that list has been incorporated in three collective bargaining contracts. Meanwhile, although the collective bargaining contracts contained grievance procedures, neither the union nor any pilot has asserted a claim under that procedure challenging seniority standing. No pilot has made any claim for the "displacement allowance" provided by the Board to compensate employees for wage reduction or loss due to the merger.

In May 1958, five years after the integration of the list was accomplished, the petitioners filed with the Civil Aeronautics Board a petition to vacate the list and establish a revised list based solely on "length of service." The Seniority Board's procedures were also challenged with respect to its action in denying requests of 54 pilots to appear in person and by counsel on their protests.

The Board dismissed the petition to revise the integrated seniority list holding that absent a claim of bad faith or failure to negotiate on the question of integration, it would not disturb the result reached. After dismissal of the petition by the Board, a petition for rehearing was filed; this was denied November 2, 1959. The petition seeking review here was filed December 28, 1959, which was more than 60 days after the original order of dismissal but within 60 days of the Board's order denying reconsideration.

Petitioners raise the following points on this appeal:

1. The Board has jurisdiction to integrate seniority lists when a merger occurs and having directed "fair and equitable" integration it has a duty to enforce its directive.

2. Even if there is no duty to do so, exercise of sound discretion requires the Board to hear and resolve the protest claims of the pilots affected.

The Board contends that the dispositive questions on this appeal are:

1. Whether the petition for review failed in that it was filed within 60 days after the Board's decision on the motion for reconsideration but more than 60 days after the Board's initial decision.

2. Whether the Board abused its discretion in dismissing the protest without hearing.

(1)

We shall treat first the question of timely filing of the petition for review

because of its importance to orderly and efficient conduct of the Board's affairs. Both petitioner and the Board contend that a petition for judicial review of a Board order may be filed within 60 days after denial of a timely petition for reconsideration of the initial order. Title 49 U.S.C.A. § 1486(a) provides "any order * * * issued by the Board * * * shall be subject to review * * * upon petition, filed within sixty days after the entry of such order * * *." The Board calls attention to Consolidated Flower Shipments, Inc.,—Bay Area v. Civil Aeronautics Board, 9 Cir., 1953, 205 F.2d 449, which held that a timely petition for reconsideration does not toll the 60 day statutory limit for seeking judicial review, but the Board's brief urges that "Consolidated Flower was erroneously decided" and urges this court not to follow it.

In State Airlines, Inc. v. Civil Aeronautics Board, 1949, 84 U.S.App.D.C. 374, 174 F.2d 510, we reached the merits of a petition for review in circumstances where review would have been denied for want of a timely petition under the dictates of Consolidated Flower,[3] supra. Prior to the Administrative Procedure Act we held, in Braniff Airways, Inc. v. Civil Aeronautics Board, 1945, 79 U.S. App.D.C. 341, 147 F.2d 152 that a petition for review was timely if filed within 60 days of denial of the motion for rehearing stating "we cannot review an order until administrative remedies have been exhausted." Id., at page 342, 147 F.2d at page 153. See also North Central Airlines, Inc. v. Civil Aeronautics Board, 105 U.S.App.D.C. 207, 265 F.2d 581, certiorari denied 1959, 360 U.S. 903, 79 S. Ct. 1285, 3 L.Ed.2d 1254, and Waterman S.S. Corp. v. Civil Aeronautics Board, 5 Cir., 1947, 159 F.2d 828, reversed on other grounds sub nom. Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp., 1948, 333 U.S. 103, 68 S.Ct. 431, 92 L.Ed. 568.

Thus, while we have *sub silentio* indicated, since the passage of the Administrative Procedure Act, that a timely petition for reconsideration tolls the 60 day period for filing a petition for judicial review, we yield to the Board's urging to declare unequivocally what we have heretofore implied. With deference to the Ninth Circuit, which has held otherwise, we join the Fifth Circuit, Waterman S.S.Corp. v. Civil Aeronautics Board, supra, and affirmatively declare our conclusion to the contrary. Cf. Skowhegan Sav. Bank v. Securities and Exchange Commission, 1952, 91 U.S.App. D.C. 388, 201 F.2d 702. The legislative history [4] of 5 U.S.C.A. § 1009(c) indicates that it was adopted to achieve harmony with the holding in Levers v. Anderson, 1945, 326 U.S. 219, 66 S.Ct. 72, 90 L.Ed. 26 to the effect that a motion for rehearing was not necessary to exhaust administrative remedies. However, while making judicial review available without a motion for rehearing, that statute did not operate to repeal the law with respect to finality. Where a motion for rehearing is in fact filed there is no final action until the rehearing is denied, as we said in Braniff Airways, Inc. v. Civil Aeronautics Board, supra. Section 1009(c) does not command a motion for rehearing in order to reach finality by exhaustion of administrative remedies; it leaves that to each litigant's choice. But when the party elects to seek a rehearing there is always a possibility that the order complained of will be modified in a way which renders judicial review unnecessary. Practical considerations, therefore, dictate that when a petition for rehearing is filed, review may properly be deferred until this has

---

3. It should be noted that prior to the holding in Consolidated Flower Shipments, Inc. v. Civil Aeronautics Board, 9 Cir., 1953, 205 F.2d 449, the Ninth Circuit had in three decisions established the rule that the filing of a timely petition for reconsideration tolled the running of the 60 day limit for filing a petition for review.

4. Sen.Doc. No. 248, 79th Cong., 2d Sess., Legislative History of The Administrative Procedure Act 230, 277, 369 (1946).

been acted upon. The contrary result reached by the Ninth Circuit has caused parties to file so called "protective" petitions for judicial review while petitions for rehearing before the Board were pending. A whole train of unnecessary consequences flowed from this: the Board and other parties may be called upon to respond and oppose the motion for review; when the Board acts, the petition for judicial review must be amended to bring the petition up to date.

■ We hold that when a motion for rehearing is made, the time for filing a petition for judicial review does not begin to run until the motion for rehearing is acted upon by the Board.

(2)

■ The legal power of the Board to integrate employee seniority lists as part of the jurisdiction over mergers can hardly be doubted. But the Board has not seen fit to assume that burden and has held that the issue should be resolved by negotiation or arbitration. In Kent v. Civil Aeronautics Board, 2 Cir., 1953, 204 F.2d 263, where the Board undertook this burden, the parties had failed and refused to negotiate or otherwise resolve the problem. Only the failure of the parties, a failure which could have endangered the efficient functioning of the airline, led the Board to act.

■ The contention that length of service should control or even that it should always be the dominant factor in seniority is not consistent with experience nor with judicial attitudes toward the subject. See Flying Tiger-Slick Merger Case, 18 C.A.B. 326, 330 (1954); Ford Motor Co. v. Huffman, 1953, 345 U.S. 330, 338–339, 73 S.Ct. 681, 97 L.Ed. 1048. Seniority is a matter of negotiation in the first instance and when confronted with the problem, the courts have recognized that factors other than time in service are also important. No general rules can or need be laid down. One difficulty with having length of service be the sole criterion in the context of airlines mergers is seen in the case of one

airline, which uses only conventional propeller equipment, merging with another using a large amount of jet and jet propeller equipment. Seniority based only on length of service might conflict with safety regulations which require special experience for jet equipment. Of necessity the process of integrating two or more seniority lists calls for compromises in the process of negotiating a result. Here, as we have pointed out, the majority group had the same representation as the minority who now challenge the result. By its very nature the process of integrating the two seniority lists can sometimes lead to consequences unfavorable to some.

It is true that the Board directed integration of the seniority lists in a "fair and equitable manner," and that this directive was not the usual practice in merger cases; but the Board's explanation was that this was done simply to protect non-union employees, if any. In light of Edwards v. Capital Airlines, Inc., 84 U.S.App.D.C. 346, 176 F.2d 755, certiorari denied 1949, 338 U.S. 885, 70 S. Ct. 186, 188, 94 L.Ed. 543, where discrimination was exerted against non-union employees, this explanation of the "fair and equitable" directive is reasonable. Additionally the Board would be placed in the position of dealing with issues not directly within its competence if it undertook to resolve conflicting claims on the interpretation of procedures established by collective bargaining agreements. The Board's experience and expertise is with transportation not labor relations problems.

■■ The Board's original directive to merge the seniority lists was reasonable and proper and the processes of negotiation were adapted to accomplish an appropriate result. In the Board's view its directive was satisfied when the affected parties negotiated and agreed on a solution. The Board's interpretation of the meaning of its own order and the scope of its own functions is entitled to great weight particularly where that interpretation is consistent with common

experience in these matters. Danielson v. Civil Aeronautics Board, 2 Cir., 1953, 204 F.2d 266; see Bowles v. Seminole Rock & Sand Co., 1945, 325 U.S. 410, 65 S.Ct. 1215, 89 L.Ed. 1700.

The order of the Board is

Affirmed.