SOUTHERN TIMBER PURCHASERS COUNCIL, Hankins Lumber Company, Inc., Hood Industries, Inc., and Hunt Plywood Company, Inc.

v.

John ALCOCK, in his official capacity as Regional Forester for Region 8 of the United States Forest Service, F. Dale Robertson, in his official capacity as Chief, of United States Forest Service, James W. Pulliam, Jr., in his official capacity as Regional Director of Region 4 of the United States Fish and Wildlife Service, and Manuel Lujan, in his official capacity as Secretary of the United States Department of the Interior.

Civ. No. 1:89–cv–2741–ODE.

United States District Court,
N.D. Georgia,
Atlanta Division.

July 29, 1991.

**1354**

Alexander Stephens Clay, IV, Mary Lillian Walker, Kilpatrick & Cody, Atlanta, Ga., Steven P. Quarles, Thomas R. Lundquist, John A. Macleod, Crowell & Moring, Washington, D.C., for plaintiffs.

Daniel A. Caldwell, III, Asst. U.S. Atty., Atlanta, Ga., Jean Williams Mellor, U.S. Dept. of Justice, Environment & Natural Resources Div., Wildlife & Marine Resources Section, Ellen Athas Ferlo, General Litigation Section, Washington, D.C., for defendants.

Stephen Edmund O'Day, Smith, Gambrell & Russell and Stephen Thomas LaBriola, Hurt, Richardson, Garner, Todd & Cadenhead, Atlanta, Ga., for movants Sierra Club and Wilderness Society.

David John White, Nat. Wildlife Federation, Atlanta, Ga., for movant Nat. Wildlife Federation.

## ORDER

ORINDA D. EVANS, District Judge.

This action arising under the National Forest Management Act, 16 U.S.C. § 1604 *et seq.* ("the Forest Act") is before the court on the parties' cross-motions for summary judgment. Fed.R.Civ.P. 56.

This dispute arises from the actions of Defendants, officials of the United States Forest Service ("the Forest Service"), restricting timber cutting within ¾ of a mile of a colony site of red cockaded woodpeckers. The red cockaded woodpecker is considered an endangered species under the Endangered Species Act, 16 U.S.C. § 1531 *et seq. See*, 50 C.F.R. § 1711(h). Pursuant to the Forest Act and regulations promulgated thereunder, 36 C.F.R. § 219, the Forest Service arrived at a plan to manage the red cockaded woodpecker. *1985 Wildlife Habitat Management Handbook* ("Woodpecker Handbook"). The Woodpecker Handbook was incorporated into the Land Resource Management Plan (discussed below) for Region 8. Plaintiffs (collectively "the Council") allege that sometime in the late 1980's, the Forest Service discontinued full implementation of the Woodpecker Handbook, and then, in response to threatened litigation from environmental groups, hastily adopted a new policy ("1989 Woodpecker policy"). The Forest Service contends that the 1989 Woodpecker policy was adopted in response to the failure of the policy embodied in the Woodpecker Handbook to prevent a severe decline in the numbers of the red cockaded woodpecker.

The change in the red cockaded woodpecker policy was first adopted by Regional Forester Alcock on March 27, 1989, after consultation with both environmental groups and Plaintiff Southern Timber Purchasers Council. (A.R. 31). The Regional Forester noted that it was not determined

whether the new policy was consistent with the existing plan, but stated that the former would supersede the latter until the plan could be amended. The policy then went on to halt or modify timber cutting within ¾ of a mile of red cockaded woodpecker colonies and to suspend cutting under contracts already in existence.

The Council appealed this decision to the Deputy Chief of the Forest Service pursuant to regulations, 36 C.F.R. § 217. The Deputy Chief responded April 14, 1989, noting that the Regional Forester had adopted the interim policy without the formal prerequisites necessary to make it an appealable decision. He then remanded the issue to the Regional Forester with directions to comply with the procedures by conducting an environmental analysis and preparing the appropriate decisional document. He continued:

> The decision document must include a reference to the consideration of compliance with the Endangered Species Act, the National Environmental Policy Act, and the National Forest Management Act in establishing this policy. The decision document will be subject to administrative appeal under 36 CFR Part 217.
>
> \*    \*    \*    \*    \*    \*
>
> [I]n addition to the above, the Regional Forester is directed to: inform the public through a Federal Register notice of the Regional Forester's intent to amend the Regional Guide and in the notice provide the public with an opportunity to comment on how the Forest Service will comply with the Endangered Species Act, the National Forest Management Act, and the National Environmental Policy Act.

(A.R. 29).

A biological evaluation of the proposed policy was made by the Forest Service's Endangered Species Program Manager on May 3, 1989. That evaluation found that the policy was "not likely to adversely affect the RCW." (A.R. 27). Notice of the Regional Forester's intent to implement the new policy was published in the Federal Register on May 5, 1989. (A.R. 23). The Fish and Wildlife Service reviewed the policy on June 15, 1989, and concurred with the previous biological evaluation. (A.R. 19). On June 26, 1989, the Regional Forester issued an Environmental Assessment, Findings of No Significant Impact and Decision Notice ("Decision Notice"). (A.R. 16).

The Decision Notice incorporated the biological evaluation and the Fish and Wildlife Service report. The first portion of the Decision Notice is the environmental assessment. This notes that the declining numbers of the red cockaded woodpecker necessitated action to ensure their survival.

> The March 27 Policy was issued as a temporary measure of limited scope. It covers only cutting practices within ¾ mile of active and inactive RCW colonies in populations of less than 250 colonies. It applies only to existing, advertised and proposed sales until new direction is issued. The policy was intentionally created to be flexible in dealing with "on the ground" situations and new information so as to maximize the Forest Service's ability to quickly comply with ESA [Endangered Species Act] and other laws.

(A.R. 16). The Regional Forester also emphasized that the effect of the policy was merely to protect the status quo.

> The Policy is urgent and temporary. Moreover, it makes no irretrievable or irreversible commitment of resources. Insofar as this policy prevents certain payment units from being cut the environmental status quo continues. Options for future actions to promote recovery of the RCW remain open.

(A.R. 16).

The second portion of the Decision Notice determines that the new policy does not significantly affect the

> human environment [because it] is limited in time and scope:
>
> —it will continue only until new direction currently being formulated is completed:
>
> —it addresses only cutting methods within ¾ mile of RCW colonies;
>
> —relatively few areas are affected;
>
> —it results in fewer trees being cut, hence maintaining the environmental status quo;

—where the status quo may be changed, further NEPA/NFMA/ESA analysis will be done at the project level; and

—it is necessary to protect the RCW as required by the Endangered Species Act. (A.R. 16).

The third portion of the Decision Notice contains the decision itself. The Regional Forester decided that the March 27, 1989 policy would continue in effect and constituted an amendment to the Land Resource Management Plan for the region. He also noted the temporary and limited extent of the policy and reiterated that the amendments were not significant for purposes of compliance with the amendment procedures under the Forest Act. "This determination is based on the fact that this policy is limited to existing advertised and proposed sales for the limited period until new direction is issued." (A.R. 16).

The Council appealed the Decision Notice to the Deputy Chief of the Forest Service. The Deputy Chief affirmed the Regional Forester on October 25, 1989. In particular, the Deputy Chief determined that the Regional Forester's actions in the face of unstable and declining red cockaded woodpecker populations necessitated quick action to preserve the status quo while a future plan was worked out. Any other course, the Deputy Chief noted, could allow the populations to so decline as to foreclose future management options. The Deputy Chief also explicitly agreed that the new policy, because it is temporary and limited in scope, is not a significant amendment to the LRMP. (A.R. 1).

Subsequent to the affirmance by the Deputy Chief, the Council brought this suit to review the Forest Service's adoption of the 1989 Woodpecker policy.

Before describing the arguments of the parties, it is necessary to outline quickly the relevant procedural requirements under the Forest Act and its implementing regulations.

"National Forests, unlike the national parks, are not wholly dedicated to recreational and environmental values." *Cronin v. United States Dept. of Agric.*, 919 F.2d 439, 448 (7th Cir.1990). Rather, they are dedicated by Congress to sustaining multiple uses, including "outdoor recreation, range, timber, watershed, and wildlife and fish purposes." Multiple–Use Sustained–Yield Act of 1960, 16 U.S.C. § 528 et seq. At the same time, under the Forest Act, the Forest Service has a duty to protect endangered wildlife and its habitat through resource management. 36 C.F.R. § 219.-19(a)(7); *see generally, Seattle Audubon Soc. v. Robertson*, No. 89–160WD, 1991 WL 180099 (W.D.Wash. March 7, 1991) p. 10–14.

The primary engine of resource management under the Forest Act is the Land Resource Management Plan,[1] which occurs at the forest level. 16 U.S.C. § 1604. The national stage in the planning process is the Renewable Resources Assessment and Program which is established by the Secretary and analyzes both the supply and demand for the resources of the National Forests and the costs and values of those resources and uses. 36 C.F.R. § 219.-4(b)(1). Next, the Regional Forester creates a Regional Guide which reflects the goals of the national program and provides "tentative resource objectives for each Forest...." 36 C.F.R. § 219.4(b)(2). The Forest Supervisor then prepares a plan for each forest, or for all forests for which he has responsibility, which is known as a Land Resource Management Plan ("LRMP"). The LRMP shall include alternatives, at least one of which incorporates the tentative objectives set forth in the Regional Guide, and must be approved by the Regional Forester. 36 C.F.R. § 219.5.

The entire process of national, regional and forest planning is subject to broad public participation rights, interdisciplinary consultation, and cost-benefit analysis (including environmental as well as commercial values). 16 U.S.C. § 1604(d); 36 C.F.R.

**1.** C. Wilkerson and H. Anderson, *Land and Resource Planning in the National Forests*, 64 Or. L.Rev. 1, 8 (1985). This article discusses at great length the structure of the nation's environmental statutes, in particular the Forest Act and the role of the Land Resource Management Plan.

219.10–12. The LRMP is required to articulate alternatives and to evaluate each. 36 C.F.R. 219.10–12. Additionally, an environmental impact statement, as defined by the National Environmental Protection Act, must be prepared.

It is undisputed that the Regional Guide and LRMP at issue in this case were adopted according to proper procedures. At issue is the procedure for implementation and amendment of the LRMP, particularly Regional Forester Alcock's compliance or non-compliance with those procedures in implementing the 1989 Woodpecker policy. The Forest Act itself addresses revisions of the LRMP, or implementation which requires amendments to the LRMP, in two provisions. First, the Act mandates that "Resource plans and permits, contracts, and other instruments for the use and occupancy of National Forest System lands shall be consistent with the land management plans." 16 U.S.C. § 1604(i). Second, the statute requires that any action which constitutes a "significant change" in the LRMP be subject to the same procedure as is necessary to formulate the LRMP itself. 16 U.S.C. § 1604(f)(4).

The regulations in the Code of Federal Regulations mirror the statutory requirements in section 1604. 36 C.F.R. § 219.10(e) and (f). The Forest Service has organized and more fully explicated the consistency requirement and the amendment process which it triggers in its *Land Resource Management Planning Handbook*, especially at chapter 5. FSH 1909.12, ch. 5. A chart of the process is included in the LRMP Handbook, and is attached to this opinion as Figure 1. The LRMP Handbook requires that consistency findings be made and documented. If the action is not consistent, the LRMP Handbook provides that the Forest Service must either modify the action or amend the LRMP. The Forest Service must then determine whether the amendment constitutes a "significant change" to the LRMP. The LRMP Hand-

book directs the Forest Service that four factors, along with any others which are appropriate to the circumstances, "are to be used in determining whether a proposed change to a forest plan is significant or not significant. . . ." FSH 1090.12, ch. 5.31b. If the amendment is found to be significant, then the amendment is subject to the procedural requirements governing the LRMP itself. If the amendment is found not to be significant, then it is subject only to a thirty day notice requirement and the completion of an environmental assessment. FSH 1090.12, ch. 5.4.[2]

This dispute raises a threshold question: which decision of the Forest Service is properly under review. The Council contends that the initial March 27, 1989 decision is reviewable because it had immediate effect, and was not stayed during the administrative appeal process. The Forest Service answers that the June 26, 1989 Decision Notice and the Deputy Chief's order affirming it represent the final order for purposes of review, because the earlier statement of policy lacked the requisite documentation to be an administratively appealable document.

■ The Council correctly states that section 10(c) of the Administrative Procedure Act, 5 U.S.C. § 704, determines finality for purposes of judicial review. Section 704 provides for review only of "final agency action," which excludes interlocutory review of "intermediate" agency decisions, although intermediate decisions are reviewable after the agency decision becomes final. Once the agency decision is "otherwise final," however, it is

> final for purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority.

---

2. The Council does not challenge Forest Service procedure after the "no significant amendment" stage. Rather, the Council contends that the Forest Service's conduct leading up to and including that determination was defective.

The relevant facts in this case are contained in the Administrative Record, and are not in dispute. Consequently, this dispute is ripe for summary judgment on the legal significance of the undisputed facts. Fed.R.Civ.P. 56.

The Supreme Court has taken a practical approach to the definition of "final" agency action. "The Court looks to see whether the action is 'definitive'; whether it has a direct and immediate effect on the parties; and finally, whether judicial review will serve efficiency or enforcement of the regulatory scheme." *Newport Galleria Group v. Deland,* 618 F.Supp. 1179, 1185 (D.D.C.1985) (citing *Fed. Trade Comm'n v. Standard Oil Co. of California,* 449 U.S. 232, 240–43, 101 S.Ct. 488, 493–95, 66 L.Ed.2d 416 (1980)). Accordingly, where a motion to reconsider or for rehearing has been filed with the agency, "there is no final action until the rehearing is denied...." *Outland v. Civil Aeronautics Bd.,* 284 F.2d 224, 227 (D.C.Cir.1960) (discussing section 704, in its prior codification at 5 U.S.C. § 1009(c), and its legislative history), *cited with approval in, Aeromar v. Dept. of Transportation,* 767 F.2d 1491, 1492 (11th Cir.1985); *ECEE, Inc. v. Federal Energy Reg. Comm'n,* 611 F.2d 554, 557 (5th Cir.1980). This rule allows the agency to modify or overrule its prior determination so as to obviate the need for inefficient judicial review. *Id.; accord, Newport Galleria Group,* 618 F.Supp. at 1185 (citing *Standard Oil Co. of California,* 449 U.S. at 240–43, 101 S.Ct. at 493–95). It also serves the interests of the separation of powers by allowing the executive branch to solve its own mistakes before the judiciary steps in to review. *McKart v. United States,* 395 U.S. 185, 194, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969); *accord, Sierra Club v. Lyng,* 694 F.Supp. 1256, 1259 (E.D.Tex.1988).

■ The Council urges the court to ignore the administrative appeal process which it instigated. In particular, the Council urges the court to refuse to consider the Decision Notice, arguing that because the Decision Notice merely continued the earlier policy, judicial review must focus on the earlier document. In essence, although the Council appealed the March decision and succeeded in having it remanded to the Regional Forester for compliance with the proper procedures, the Council is now attempting to have the earlier decision reviewed by this court.

■ The waste of judicial and agency resources which the Council urges the court to commit is just what is sought to be avoided by the rule recognized in *Outland,* 284 F.2d at 227. *See also, Newport Galleria Group,* 618 F.Supp. at 1185; *Standard Oil Co. of California,* 449 U.S. at 240–43, 101 S.Ct. at 493–95). The filing of an appeal necessarily signals a willingness to accept a new result as the new final action, rendering the prior action non-final. *See, Outland,* 284 F.2d at 227. It hardly "serve[s] efficiency or enforcement of the regulatory scheme" to allow judicial review of an agency decision which the agency itself has already reversed and replaced. *See, Newport Galleria Group,* 618 F.Supp. at 1185 (citing *Standard Oil Co. of California,* 449 U.S. at 240–43, 101 S.Ct. at 493–95). The Council appealed the March policy and won a partial victory. Although the Deputy Chief dismissed the appeal as premature, he also found that the Regional Forester had announced the policy with inadequate procedural steps and remanded with directions. On the remand, the Regional Forester issued an appealable Decision Notice. *See,* 36 C.F.R. § 217.3. Thus, in response to the Council's appeal, the Forest Service attempted to correct its actions to conform them to the statute and the regulations. Review of the earlier decision, therefore, would be inefficient, rendering the March decision non-final for purposes of judicial review.[3] The final action, therefore, is the June 26, 1989 Decision Notice.[4]

---

**3.** The Council also urges that, because the March policy was merely continued in the Decision Notice, the former is therefore final. This argument, however, does not respond to the fundamental inefficiency of allowing a party to both successfully appeal an administrative decision and yet seek review of the earlier, uncorrected decision. This inefficiency rationale differs from the immediacy prong of the *Standard*

*Oil Co.,* test, upon which the Council's argument draws. Moreover, as discussed below, retroactivity of an agency action is allowed if reasonable.

**4.** The Forest Service contends that only the October 25, 1989 order from the Deputy Chief, affirming the June Decision Notice is reviewable as final action. However, inasmuch as the

The Council challenges the 1989 Woodpecker policy on three grounds. First, the Council argues that even if the Decision Notice represents the final agency action, it nonetheless comes too late to support the implementation of the policy from March to June, 1989. Second, the Council contends that the Decision Notice fails to make a written determination of consistency, as required by regulation. Finally, the Council attacks the Regional Forester's determination that the 1989 Woodpecker policy does not significantly change the LRMP, contending that he did not consider all of the requisite factors and that the determination was in any event incorrect.

■ The standard of review for agency decisions is set forth in the Administrative Procedure Act:

... The reviewing court shall—

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

\*  \*  \*  \*  \*  \*

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law.

\*  \*  \*  \*  \*  \*

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

5 U.S.C. § 706. "When applying subsection (A), we must consider whether the decision is based 'on a consideration of all the relevant factors and whether there has been a clear error of judgment.'" *Citizens for Environmental Quality, v. United States*, 731 F.Supp. 970, 983 (D.Colo. 1989) (applying the Forest Act) (quoting *Citizens to Preserve Overton Park, Inc. v.*

*Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971)). This standard is deferential, presumes the validity of the agency action, and directs the court not to substitute its judgment for that of the agency. *Manasota–88, Inc. v. Thomas*, 799 F.2d 687, 691 (11th Cir.1986). However, "[i]t is well settled that an Executive Agency of the Government is bound by its own regulations, which have the force and effect of law, and the failure of an agency to follow its own regulations renders its decision invalid.... It is not material whether the regulation was substantive or procedural...." *Gulf States Mfrs., Inc. v. N.L.R.B.*, 579 F.2d 1298, 1308 (5th Cir. 1978); *accord, City Cab Co. of Orlando, Inc. v. N.L.R.B.*, 787 F.2d 1475, 1480 (11th Cir.), *cert. denied*, 479 U.S. 828, 107 S.Ct. 108, 93 L.Ed.2d 57 (1986).

■ The Council's first argument is that the Decision Notice is procedurally inadequate to support implementation of the 1989 Woodpecker policy for the period from March 27 to June 26, 1989. The Council characterizes the Decision Notice as a post hoc rationalization and a belated attempt to paper over the prior failure to document the decision to implement a new policy. According to the Council, section 1604(f)(4) of the Forest Act as well as the Forest Service Manual, FSM § 1922.41.1, and the Forest Service LRMP Handbook, FSH § 5.31a, require that the amendment to the LRMP must take place before implementation of an inconsistent policy. Inasmuch as the Decision Notice merely continues the earlier decision, the Council contends that it comes too late to justify the earlier action.

Consonant with the discussion above concerning final agency action, the Council's argument misconstrues the effect of an administrative appeal decision, even an informal one such as here, which modifies an earlier decision. The agency must be allowed to use its internal administrative appeal procedure to correct its own errors.

Deputy Chief's decision merely affirms the Regional Forester, it is the former's decision which the court must address. *See, Graham v. Bowen*, 790 F.2d 1572, 1574 n. 2 (11th Cir.1986) (discussing relationship between the Administrative Law Judge and the Appeals Council in disability benefits case).

If, after correcting them, the agency chooses to give retroactive effect to its new decision, that is within its power. *See, United States v. An Article of Drug Neo–Terramycin,* 540 F.Supp. 363, 373 (N.D.Tex.1982), *aff'd,* 725 F.2d 976 (5th Cir. 1984) (An agency can give retroactive effect to a rule or policy so long as it is reasonable). Therefore, this argument fails.

■ The Council next challenges the 1989 Woodpecker policy on the grounds that it fails to make a written finding of consistency as required by regulations. FSM 1922.41.1, 1922.5; FSH 1090.12, ch. 5.31a, 5.4. The Forest Service does not respond directly to this contention. However, upon review of the Decision Notice it is apparent that a finding of inconsistency was made. Under the regulatory scheme, a finding of consistency ends the documentation process. That is, the action does not require an amendment to the LRMP and the attendant procedures. Because such a finding insulates the Forest Service from accountability, the regulations require that it be made on the record. However, a finding of inconsistency triggers all the procedures designed to insure accountability. Therefore, although the regulations require that the determination be made on the record, there is no reason to read such a requirement in a draconian manner where the Forest Service nonetheless subjects itself to the ensuing procedures. In this case, the Decision Notice clearly states that "[t]he policy is hereby an amendment to the LRMP's for those National Forests covered by it." (A.R. 16) This indicates that the Regional Forester has declined to make a finding of consistency, *i.e.,* he has

found the policy inconsistent with the LRMP, and has moved on to the amendment procedure which follows an inconsistent action. *See,* LRMP Handbook, FSH 1909.12, ch. 5.3. Consequently, the record reveals that a finding of inconsistency was made.

■ The Council next challenges the Forest Service's determination that the 1989 Woodpecker policy, although it is inconsistent with the LRMP, does not significantly change the LRMP. 16 U.S.C. § 1604(f)(4); 36 C.F.R. § 219.10(f); LRMP Handbook, FSH 1909.12, ch. 5.32. Analysis of this issue proceeds from the four factors set forth in the LRMP Handbook but includes as well "[o]ther factors" appropriate to the circumstances. LRMP Handbook, FSH 1909.12, ch. 5.32(3). The four enumerated factors are: (a) Timing, (b) Location and Size, (c) Goals, Objectives, and Outputs, and (d) Management Prescription.[5] *Id.* The phrasing of the factors indicates that no single one is conclusive. *See, LRMP Handbook,* FSH 1909.12, ch. 5.32 ("The following factors are to be used when determining whether a proposed change to a forest plan is significant or not significant...."). The Council challenges the Regional Forester's determination of no significant change on two related grounds: the first procedural, and the second substantive.

First, the Council contends that the Decision Notice is procedurally defective because it (a) did not consider each of the four factors, and (b) considered the danger to the red cockaded woodpecker although conservation concerns are not listed among the four factors. The "other factors" lan-

---

**5.** The definition of Goals, Objectives, and Outputs given in the LRMP Handbook reads:

> Determine whether the change alters the long-term relationships between the levels of goods and services projected by the forest plan. Consider whether an increase in one type of output would trigger an increase or decrease in another. Determine whether there is a demand for goods or services not discussed in the forest plan. *In most cases, changes in outputs are not likely to be a significant change in the forest plan unless the change would forego the opportunity to achieve an output in later years.*

The definition of Management Prescription given in the LRMP Handbook reads:

> Determine whether the change in a management prescription is only for a specific situation or whether it would apply to future decisions throughout the planning area. Determine whether or not the change alters the desired future condition of the land and resources or the anticipated good and services to be produced.

FSH 1909.12, ch. 5.32(3)(c) and (d).

guage in the LRMP Handbook renders the latter proposition meritless. As to the former, the Council contends that the Decision Notice merely focusses on the timing. For the reasons stated below, the Decision Notice reveals that the Regional Forester considered all four factors.

Second, the Council contends that based on the four factors set forth in the LRMP Handbook, the Regional Forester's finding that the 1989 Woodpecker policy does not constitute a significant change is arbitrary and capricious.[6] That is to say, the decision is not "based 'on a consideration of all the relevant factors and [represents] a clear error of judgment.'" *Citizens for Environmental Quality, Inc.,* 731 F.Supp. at 983 (applying the Forest Act) (quoting *Citizens to Preserve Overton Park, Inc.,* 401 U.S. at 416, 91 S.Ct. at 824).

The Council has failed to show that the Regional Forester did not consider the relevant factors or that his judgment was clearly in error. What the Council's argument declines to recognize is the ameliorative effect of the abbreviated nature of the 1989 Woodpecker policy. Although the policy was implemented during the current LRMP's lifetime, it is temporary only and need not extend beyond the LRMP period. This profound limitation weakens the policy's effect in each of the other three factors. For example, because timber protected from cutting under the policy may be re-claimed at a later time, its effect on "Goals, Objectives, and Outputs" is small. FSH 1909.12, ch. 5.32(3)(c). Similarly the policy protects the "desired future condition of the land and resources" set forth in the management prescription. FSH 1909.-12, ch. 5.32(3)(d). Finally, the area affected is a small portion of the total area subject to timber cutting under the LRMP. In

sum, the policy is a temporary attempt to preserve the status quo in certain discrete locations while a later policy can be weighed, which seriously limits the policy's significance to the LRMP. Moreover, the 1989 Woodpecker policy merely calls a time-out during which the current LRMP strategy for protecting the red cockaded woodpecker, *i.e.,* the Woodpecker Handbook, can be re-evaluated. As such, it does not significantly amend the LRMP, but rather represents a prudent step in carrying it out.

This reasoning, furthermore, is documented in the Decision Notice.

> Based on the information contained in the Policy of March 27 and the rationale provided above, I have determined that this Policy is not an action which has a significant effect on the human environment. The action is limited in time and scope:
>
> —it will continue only until new direction currently being formulated is completed;
>
> —it addresses only cutting methods within ¾ mile of RCW colonies;
>
> —relatively few areas are affected;
>
> —it results in fewer trees being cut, hence maintaining the environmental status quo;
>
> —where the status quo may be changed, further NEPA/NFMA/ESA analysis will be done at the project level; and
>
> —it is necessary to protect the RCW as required by the Endangered Species Act.

(A.R. 16) Based on this reasoning, the court cannot say that the Regional Forester did not consider the relevant factors, or that his judgment was clearly erroneous.[7] *See, Citizens for Environmental Quality, Inc.,*

---

**6.** The Council also raises an argument based on the legislative intent behind the Forest Act. This argument is a mere makeweight, and is not persuasive.

**7.** The Council also appears to raise arguments based on the significance of the temporarily lost timber contracts. It is clear, however, that no entitlement to timber exists. *See,* 36 C.F.R. §§ 219.3, 219.16. Plain logic also makes clear that implementation which lowers outputs is not a significant amendment, or indeed any

amendment, to the Allowable Sale Quantity set forth in the LRMP, which is merely a ceiling. *See, Id.*

Finally, the Council urges the court to consider the significance of the 1989 Woodpecker policy in light of the superseding policy, to which both parties allude but which neither has produced for the court. In essence, the Council desires the court to rule on these policies together without viewing one of them. This desire must go unsatisfied.

731 F.Supp. at 983 (applying the Forest Act) (quoting *Citizens to Preserve Overton Park, Inc.*, 401 U.S. at 416, 91 S.Ct. at 824).

The Council raises no further challenges to the 1989 Woodpecker policy.

Accordingly, the Council's motion for summary judgment is DENIED, and the Forest Service's cross-motion for summary judgment is GRANTED. All claims in this case having been ruled upon, the Clerk is hereby DIRECTED to enter judgment in favor of the Defendants.

SO ORDERED.

APPENDIX

LAND AND RESOURCE MANAGEMENT PLANNING HANDBOOK

PROCESS FOR IMPLEMENTING FOREST PLAN

FOREST PLAN

PROPOSED ACTIONS

ISSUES/SCOPING

ALTERNATIVE ACTIONS

YES ———— CONSISTENT WITH ___ NO
FOREST PLAN

YES ———— MODIFY ___ NO
ACTION

YES ———— (DETERMINE) ———— AMEND ___ NO
(SIGNIFICANCE) PLAN

REJECT

CONSIDER

A N A L Y S I S . A N D . E V A L U A T I O N .

DECISION AND DOCUMENTATION
(Select an Alternative Action)

PROGRAM BUDGET DEVELOPMENT

PROJECT DESIGN

EXECUTION/ADMINISTRATION

MONITORING/EVALUATION

*-FSH 7/88 AMEND 1-*