LAMINATORS SAFETY GLASS
ASSOCIATION, Petitioner,

v.

CONSUMER PRODUCT SAFETY
COMMISSION, Respondent.

No. 77–1863.

United States Court of Appeals,
District of Columbia Circuit.

April 17, 1978.

As Amended April 19, 1978.

Charles R. McConachie, Benjamin P. Schoen, Attys., U. S. Dept. of Justice, Theodore J. Garrish, Gen. Counsel, and Alan H. Schoem, Attys., U. S. Consumer Product Safety Commission, Washington, D. C., were on the motion to dismiss for respondent.

1. 41 Fed.Reg. 6178 (1976).

2. *Id.*

Kim D. Mann, Washington, D. C., was on the reply to the motion to dismiss for petitioner.

Before WRIGHT, Chief Judge, and TAMM and LEVENTHAL, Circuit Judges.

Opinion PER CURIAM.

PER CURIAM:

In this motion, the Consumer Product Safety Commission seeks dismissal of a petition for review filed by the Laminators Safety Glass Association challenging a consumer product performance standard covering various architectural glazing materials including laminated glass. Because the petition for review is untimely, we grant the Commission's motion to dismiss.

## I. FACTUAL BACKGROUND

On February 11, 1976, the Consumer Product Safety Commission published a proposed performance standard for architectural glazing materials in the Federal Register[1] pursuant to the informal rulemaking procedures of the Administrative Procedure Act (APA), 5 U.S.C. § 553. The proposed standard required laminated glass in shower doors, sliding doors, and similar items to meet rigorous impact standards in order to minimize the possibility of accidental injury.[2] On March 8, 1976, the Commission held a hearing to allow interested persons an opportunity for oral presentation of data, views, and arguments as required by Section 9(a)(2) of the Consumer Product Safety Act (CPSA), 15 U.S.C. § 2058(a)(2). After considering oral and written commentary, the Commission published a modified performance standard in the Federal Register on January 6, 1977.[3] The notice provided that the performance standard, with a few exceptions not relevant here would become effective on July 6, 1977.

After the Commission published the modified performance standard, a group of manufacturers formed the Laminators

3. 42 Fed.Reg. 1428 (1977), now codified in 16 C.F.R. § 1201 *et seq.*

Safety Glass Association (LSGA). Preliminary testing by LSGA indicated that the laminated glass industry would encounter "unanticipated difficulties" in meeting the newly proposed standard and that adverse economic consequences beyond those initially considered by the Commission could result from enforcement of the performance standard.[4] Specifically, LSGA contended that the Commission erred in assuming that laminated glass could consistently pass the prescribed impact tests if the manufacturers doubled the thickness of the plastic interlayer.[5]

This newly discovered problem prompted LSGA to explore administrative remedies. On June 27, 1977, LSGA sent a letter to the Commission which (1) sought to stay the glazing standard as it related to certain kinds of laminated glass pending further testing by the Association, (2) petitioned the Commission to amend the standard to exclude laminated glass or to modify the prescribed standards, and (3) submitted "limited exceptions" to the findings in the Commission's January notice of the rule.[6] In conjunction with the "limited exceptions", the Association asked the Commission to reconsider the rulemaking action and reopen the proceedings.

The Commission considered the LSGA letter at a public meeting held on July 28, 1977. As a result of its deliberations, the Commission stayed the performance standard as it applied to laminated glass that conformed to a less demanding industry voluntary standard. The stay had a termination date of December 6, 1977. The Commission's order noted that the stay would

allow LSGA to continue testing designed to determine whether the industry could realistically comply with the Commission's rigorous impact standard and would provide the Commission with sufficient time to consider LSGA's request that the Commission amend or modify the standard.[7]

The order did not comment upon LSGA's "limited exceptions" or upon its requests for reconsideration of the rule or for reopening of the proceedings. On September 23, 1977, LSGA filed a petition for review of the performance standard in this Court.

## II. MERITS

Judicial review of consumer product safety standards is provided by Section 11 of the Consumer Product Safety Act, 15 U.S.C. § 2060, which states:

Not later than 60 days after a consumer product safety rule is promulgated by the Commission, any person adversely affected by such rule . . . may file a petition with the United States court of appeals for the District of Columbia . . . for judicial review of such rule.

The Commission argues that the consumer product safety standard covering laminated glass was promulgated on January 6, 1977, when it published the modified standard in the Federal Register. If the Commission is correct in this contention, the Association's petition for review, filed more than nine months after the January date, would be untimely under Section 11 of the CPSA, thus depriving this Court of jurisdiction.

---

4. Petitioner's Reply to Motion to Dismiss at 13–14.

5. *Id.* at 15–16.

6. The Association filed numerous exceptions to findings of the Commission in its January 1977 notice. Among other things, the Association challenged the Commission's finding that it had jurisdiction to regulate laminated glass, its judgment that the proposed standard would reduce or eliminate unreasonable risk of injury, and its conclusion that the economic impact of the standard would not severely weaken the position of laminated glass in the marketplace.

The Association also proposed that the Commission find that the impact tests prescribed by the performance standard did not produce consistent results, that the voluntary industry standard had proved satisfactory and effective over the years, and that architectural products were improperly categorized under the standard. *See* Limited Exceptions of Laminators Safety Glass Association and Petition for Reconsideration of and to Reopen Proceeding for Receipt of Additional Evidence at 3.

7. In re Laminators Safety Glass Association, Order, August 13, 1977 at 1.

LSGA raises three arguments to escape dismissal. First, the Association maintains that formal rulemaking provisions of the Administrative Procedure Act are applicable to consumer product safety standard proceedings and that the Commission therefore did not finally promulgate the standard until the Commission denied LSGA's "limited exceptions" on July 28, 1977. If so, the Association's petition for review would have been filed within 60 days of the standard's promulgation. Second, the Association claims that the filing of its petition for reconsideration tolled the running of the period for judicial review under Section 11 until the Commission at its July 28 meeting in effect denied the petition by refusing to entertain it. Finally, LSGA argues, through a motion to amend its petition for review, that even if the 60 day statutory period for judicial review has elapsed, the judicial remedy afforded by Section 11 is inadequate and that subject matter jurisdiction therefore may be conferred upon this Court by the Administrative Procedure Act, 5 U.S.C. § 703.

## A. SUBJECT MATTER JURISDICTION UNDER SECTION 11 OF THE ACT

### 1. Applicability of Formal Rulemaking Provisions

When rules are required by statute to be made "on the record after an opportunity for agency hearing," the formal rulemaking provisions of §§ 556 and 557 of the Administrative Procedure Act apply, 5 U.S.C. § 553(c). Section 557(c) of the APA provides that parties to a proceeding are entitled to file exceptions to initial findings and decisions that must be considered before the agency takes final action. The Association argues that since Section 9 of the Consumer Product Safety Act requires the Commission to provide interested parties with an opportunity for oral presentation of "data, views, and arguments," the Act mandates a hearing "on the record after an opportunity for an agency hearing," thereby making § 557(c) of the APA applicable to proceedings to issue consumer product safety standards.

LSGA's contention that it is entitled to file exceptions before a final rule is promulgated by the Commission is without merit. The Supreme Court has held that before a statute triggers formal rulemaking procedures, it must require a hearing "on the record" or its equivalent, *United States v. Florida East Coast Railroad Company*, 410 U.S. 224, 239, 93 S.Ct. 810, 35 L.Ed.2d 223 (1973). Section 9 of the CPSA does not explicitly or implicitly require such a hearing. Normally under informal rulemaking, the agency may in its discretion determine whether parties should be allowed an opportunity for oral presentation of data, views, and arguments, 5 U.S.C. § 553(c). By expressly requiring the Commission to provide an opportunity for oral presentations, Section 9 simply mandates procedures that would otherwise be available only in the exercise of the Commission's discretion. A statutory direction to permit comments to be made orally as well as in writing still presumes the framework of informal rulemaking and does not constitute the mandate of a hearing "on the record" or its equivalent[8] that would make the formal rulemaking provisions of §§ 556 and 557 of the APA applicable.[9]

---

**8.** The Association presents an alternative argument that if the consumer product safety standard was promulgated in January 1977, LSGA has a due process right to file post-promulgation exceptions since the Association came into existence only after the standard became final. Individual members of the association, however, had notice of the proceedings and a full opportunity to participate. Under these circumstances, we find the petitioner's due process claims without merit.

**9.** Our interpretation of 15 U.S.C. § 2058(a)(2) comports with the legislative history of the Act.

The Report of the House Commerce Committee notes that the formal rulemaking requirements of sections 556 and 557 of the APA "were thought to unduly involve the Commission in adjudicatory procedures inappropriate to the essentially legislative nature of the rulemaking proceeding." The Committee stated that by requiring an opportunity for oral presentation of views, data, or arguments in addition to providing an opportunity for the submission of written comments required by section 553 of the APA, the Committee hoped to "maximize

Even if there is no statutory right to file exceptions before a final rule is promulgated under 15 U.S.C. § 2058, LSGA contends that the Commission nevertheless acted as if the exceptions were properly filed, thus tolling the period for judicial review, cf. Tallman v. Udall, 116 U.S.App.D.C. 379, 384, 324 F.2d 411, 416 rev'd on other grounds, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965). LSGA supports its argument by citing a memorandum by the Deputy Secretary of the Commission which states that the decision of the Commission at its July 28 meeting was to "deny 'limited exceptions' ".[10] LSGA also points to a transcript of the Commission's meeting which notes that the Chairman urged that the Commission "deny the request for exceptions."[11]

The Commission replies by stating that it did not deny the exceptions on the merits, but refused to address them. The Commission marshalls support from the official record of the proceedings, which reports that "the Commission has decided not to address the 'limited exceptions' submitted by LSGA."[12]

We agree with the Commission's view of the nature of its action. While there is casual talk at the Commission meeting of "denying" the exceptions, it is obvious that they were not considered on the merits. A staff memorandum submitted to the Commission prior to its meeting stated that the "limited exceptions" were not properly before the Commission.[13] The memorandum

noted, however, that the Commission could, in its discretion, consider them in an ad hoc proceeding. No such ad hoc proceeding occurred. The total lack of substantive discussion of the "exceptions" indicates that the official report stating that they were not addressed fairly reflects what occurred at the Commission meeting. Thus, even assuming the correctness of the Association's underlying legal argument, the 60 day period for judicial review was not tolled by de facto consideration of the "limited exceptions" submitted by LSGA.[14]

## 2. Filing of Petition for Reconsideration

Relying upon Outland v. C. A. B., 109 U.S.App.D.C. 90, 284 F.2d 224 (1960), LSGA argues that it tolled the statutory period for seeking judicial review by filing a petition for reconsideration with the Commission. In Outland, we held that where a timely petition for rehearing is filed, the statutory period for seeking judicial review is tolled until the final disposition of the petition for rehearing by the agency.

Unlike in Outland, however, the Consumer Product Safety Act and regulations promulgated thereunder do not provide for rehearing or reconsideration after the promulgation of a consumer product safety standard. Under the statutory and regulatory scheme, interested parties may make oral and written presentations to the Commission after notice of the proposed consumer product safety standard has been

opportunities to participate in rulemaking without unduly entangling the Commission in trial type procedures." See H.R.Rep.No.1153, 92d Cong., 2d Sess. 37–38 (1972).

10. Memorandum of Deputy Secretary, July 29, 1977, at 3.

11. The Commission does not transcribe its recordings of open session meetings. Counsel for the petitioner, however, prepared a transcript from the official recording of the Commission.

12. Record of Commission Action, July 28, 1977, at 1.

13. Memorandum of Alan H. Schoem, Attorney, Office of the General Counsel, July 19, 1977, at 7.

14. The petitioner also appears to claim that the "savings clause" of the Consumer Product Safety Act provides a basis for jurisdiction in this Court. The "savings clause" of the Act, 15 U.S.C. § 2060(e) states that the remedies in Section 11 "shall be in addition and not in lieu of any other remedies provided by law." In order to invoke the savings clause, however, LSGA must point to an independent base of subject matter jurisdiction. While it is possible that in highly unusual circumstances jurisdiction to review consumer product safety standards might be found in the district court under 28 U.S.C. § 1331 after the period for review has elapsed, see e. g. Nader v. Volpe, 151 U.S.App. D.C. 90, 466 F.2d 261 (1972), no basis for original jurisdiction in the Court of Appeals exists beyond that outlined in Section 11.

published in the Federal Register, 15 U.S.C. § 2058(a)(2). After considering the commentary, the Commission may promulgate the standard, 15 U.S.C. § 2058(a)(1). Thereafter, affected parties may seek judicial review of the standard, 15 U.S.C. § 2060, or may seek to amend or revoke them, 15 U.S.C. §§ 2058(e), 2059. Because there is no provision for rehearing or reconsideration by the Commission,[15] the policies behind *Outland*—exhaustion of administrative remedies and avoidance of unnecessary filing of protective petitions for judicial review pending final administrative disposition—are not pertinent. We therefore find that *Outland* does not form a basis for tolling the 60 day statutory period for judicial review in this case.

## B. SUBJECT MATTER JURISDICTION PURSUANT TO 5 U.S.C. § 703

■ After filing its petition for review, LSGA moved to amend it to allege subject matter jurisdiction under 5 U.S.C. § 703. This provision of the Administrative Procedure Act states in relevant part that "Except to the extent that prior, adequate, and exclusive opportunity for judicial review is provided by law, agency action is subject to judicial review in civil or criminal proceedings for judicial enforcement."

Any argument that the Administrative Procedure Act provides an independent basis for this Court's subject matter jurisdiction is precluded by the Supreme Court's recent decision in *Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). In this case, the Supreme Court held that the Act is not to be interpreted as an implied grant of subject matter jurisdiction to review agency action, 430 U.S. at 105, 97 S.Ct. 980. While we grant LSGA's motion to amend its petition to allege subject matter jurisdiction under the APA, *Sanders*

requires that we hold these allegations to be without merit.

## C. AVAILABILITY OF ADMINISTRATIVE REMEDY FOR CONSIDERATION OF NEW INFORMATION

■ In granting the Commission's motion to dismiss, the Court is aware that there may be times when a manufacturer or group of manufacturers discovers new information only after a consumer product safety standard has been promulgated. The Consumer Product Safety Act provides a remedy under these circumstances. Under 15 U.S.C. § 2059, any interested person may petition the Commission to commence a proceeding for amendment or revocation of a consumer product rule. While this provision was in part designed to insure that consumers could institute proceedings before the Commission, we think the term "interested parties" as used in 15 U.S.C. § 2059 is broad enough to include within its scope interested manufacturers who seek relief from a consumer product safety standard. As a result, our holding in this case will not make it impossible for manufacturers to obtain an amendment or revocation of a consumer product safety standard after the 60 day period for judicial review if they can make a persuasive case that the rule is not reasonably necessary to eliminate or reduce an unreasonable risk of injury associated with the product, 15 U.S.C. § 2058(e). We do not address ourselves to the issue of on what basis there may be a challenge in court to an agency's failure to initiate amendment proceedings requested by a manufacturer. Such a challenge would not come within the limited jurisdiction of the Court of Appeals, 15 U.S.C. § 2059(e). Moreover, in this case, LSGA withdrew its amendment request after further testing had been completed.[16] Under

15. The fact that the Commission does not have procedures for rehearing, reconsideration, or reopening of the record does not violate the Administrative Procedure Act. The APA only requires that the agency provide a procedure for "issuance, amendment, or repeal of a rule." 5 U.S.C. § 553(e). The Consumer Product

Safety Act contains such a provision, 15 U.S.C. § 2059. *See* discussion under II.C. *infra.*

16. *See* Motion of Laminators Safety Glass Association for Dismissal of Petition to Modify *Safety Standard* and for Seven Month "Grace Period" to Deplete Inventories at 1, where the Association concedes that, based on compre-

these circumstances, we do not believe our holding in this case yields a harsh result.

### III. CONCLUSION

Because the petitioner failed to file a petition for review within the 60 day period after promulgation of the consumer product safety standard, the Commission's motion to dismiss is granted.

hensive testing, "the laminated glass industry possesses the manufacturing technology and testing technique to pass the Commission's impact tests.