PLASKOLITE, INC., Plaintiff,

v.

BAXT INDUSTRIES, INC., Plastics North American, Inc., and Dow Chemical Co., Defendants.

Civ. A. No. C79–1128A.

United States District Court,
N. D. Georgia,
Atlanta Division.

March 18, 1980.

Trammel E. Vickery, Hansell, Post, Brandon & Dorsey, Atlanta, Ga., Gerry Levenberg, Van Ness, Feldman & Sutcliffe, Washington, D.C., for plaintiff.

Phillip S. McKinney, Rogers & Hardin, Atlanta, Ga., for defendants.

## ORDER

ORINDA DALE EVANS, District Judge.

The above-captioned case is now before the Court on Defendants' Motion to Dismiss. In this case arising under the Consumer Product Safety Act, 15 U.S.C. § 2051 *et seq.* (1974), Plaintiff Plaskolite, Inc., a manufacturer and extruder of acrylic plastics has brought a private enforcement action seeking injunctive relief as well as the imposition of a statutory penalty against Defendants for alleged violations of a consumer product safety standard for architectural glazing materials, 16 CFR § 1201

1. 15 U.S.C. § 2056 (1979 Supp.). See also 15 U.S.C. § 2058 (1974).

2. A proposed partial revocation of 16 CFR § 1201 is presently pending before the Commission. 44 Fed.Reg. 55386 (1979). If the standard were partially revoked as proposed, the question of injunctive relief presented in this case would be rendered moot.

(1979), promulgated by the Consumer Product Safety Commission pursuant to § 7 of the Consumer Product Safety Act (hereinafter referred to as the Act).[1] Plaintiff alleges that the glazing materials manufactured by Defendant Baxt Industries, Inc., out of a material, Tyril, supplied by Defendant Dow Chemical Company, and distributed by Defendant Plastics North American, Inc., violate the applicable consumer product safety standard for architectural glazing materials.[2] Plaintiff alleges that its product, unlike that of Defendants, does meet the standards for said glazing products and that Defendants' failure to comply places Plaintiff at a competitive disadvantage.

The Court turns first to the issue of whether the Plaintiff, a manufacturer, is entitled to bring a private enforcement action pursuant to § 24 of the Act.[3] While the primary enforcer of the Act is the Consumer Product Safety Commission,[4] the Act does grant "any interested person" the right to bring a private enforcement action in federal district court "to enforce a consumer product safety rule or an order under section 2064 of this title, and to obtain appropriate injunctive relief." 15 U.S.C. § 2073 (1979 Supp.).

Defendants contend that the Plaintiff is not a proper plaintiff in a private enforcement action brought pursuant to § 24 of the Act, arguing that the Act does not create a private cause of action in favor of competitors of manufacturers and retailers of consumer products. The appropriateness of this private enforcement action rests on the construction of the term "interested person" as it appears in § 24. If the Court finds that the Plaintiff is an "interested person" for the purposes of § 24, then the Plaintiff is clearly entitled to bring this suit

3. 15 U.S.C. § 2073 (1979 Supp.).

4. Enforcement actions may also be brought by the Attorney General. 15 U.S.C. § 2071 (1979 Supp.).

pursuant to the authority granted by that section of the Act. However, if the Court finds that the term "interested person" does not include the Plaintiff within its scope, then the instant action must be dismissed.[5]

■ The question of construction presented to the Court in the instant case is one of first impression. There are no judicial precedents or administrative interpretations to which this Court can look for guidance.[6] It is a well-recognized principle of statutory construction and the point from which the Court begins its analysis, that if doubt exists as to the meaning of language in a statute the statute should be construed in light of its statutory purpose and effect given to Congressional intent. *See, e. g., Kokoszka v. Belford*, 417 U.S. 642, 94 S.Ct. 2431, 41 L.Ed.2d 374, *rehearing denied*, 419 U.S. 886, 95 S.Ct. 160, 42 L.Ed.2d 131 (1974); *U. S. v. Article of Drug . . . Bacto-Unidisk*, 394 U.S. 784, 89 S.Ct. 1410, 22 L.Ed.2d 726, *rehearing denied*, 395 U.S. 954, 89 S.Ct. 2013, 23 L.Ed.2d 473 (1969); *Saxon v. Georgia Ass'n of Independent Insurance Agents, Inc.*, 399 F.2d 1010 (5th Cir. 1968).

■ The Court begins its analysis of § 24 of the Act, granting "any interested person" a right to bring a private enforcement action, by examining the term "interested person". At first blush, the term "interested person" might appear to include within its scope any person with an interest in bringing an action, regardless of the nature of the interest. The term "interested person" cannot, however, be defined in the abstract; when used in a statute it is a term which is not self-defining, but rather one which is necessarily defined by the con-

text in which it is placed. The Court must determine the interests which are sought to be served by the statute and the Act as a whole.

■ Reference to the entire statutory scheme is necessary in analyzing a statute. *See Kokoszka v. Belford, supra*, 417 U.S. at 650, 94 S.Ct. at 2436. A court must look to the legislation as a whole in order to discern its statutory purpose. The Court first directs its attention to § 2 of the Act,[7] entitled "Congressional findings and declaration of purpose". The declared purposes of the Act are:

(1) to protect the public against unreasonable risks of injury associated with consumer products; (2) to assist consumers in evaluating the comparative safety of consumer products; (3) to develop uniform safety standards for consumer products and to minimize conflicting State and local regulations; and (4) to promote research and investigation into the causes and prevention of product-related deaths, illnesses, and injuries.

15 U.S.C. § 2051(b)(1)–(4) (1974). These purposes were stated in light of the findings of Congress that consumers are unable to adequately anticipate and safeguard themselves against the unreasonable risks of injury presented by an unacceptable number of consumer products and that they should be protected against such risks. 15 U.S.C. § 2051(a)(1)–(3) (1974). Congress found regulation of consumer products to be necessary in order to accomplish the objectives of the Act. 15 U.S.C. § 2051(a)(6) (1974).

■ It is evident from the statute setting forth Congressional findings and decla-

---

5. Plaintiff's prayer for the imposition of a statutory penalty is disposed of on p. 218, *infra.*

6. As a general rule interpretations of a statute made by an agency charged with its administration are to be accorded great weight when a court undertakes statutory construction. *See, e. g., Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 99 S.Ct. 1601, 1612, 60 L.Ed.2d 66 (1979); *Quern v. Mandley*, 436 U.S. 725, 738, 98 S.Ct. 2068, 2076, 56 L.Ed.2d 658 (1978); *Brennan v. Greene's Propane Gas Service, Inc.*, 479 F.2d 1027, 1031 n. 13 (5th Cir. 1973).

In this case, however, there is no opportunity for the Commission to interpret § 24 of the Act since it is a provision which allows an "interested person" to bring an action in federal district court. Therefore, the Commission is not involved in the administration of this statutory provision; it has its only contact with plaintiffs under § 24 when it receives notice of the suit from them pursuant to the statute.

7. 15 U.S.C. § 2051 (1974).

ration of purpose that the Act was intended to benefit the consuming public and protect the consuming public's interests in safe consumer products. The remaining provisions of the Act are clearly geared to achieving these goals. Among the powers granted to the Consumer Product Safety Commission by the Act are the powers to test products,[8] conduct studies and investigations on the safety of consumer products,[9] promulgate by rule consumer product safety standards,[10] and enforce the provisions of the Act.[11] The central provisions of the Act granting the Commission the power to promulgate by rule consumer product safety standards require the Commission to make findings that the rule "is reasonably necessary to eliminate or reduce an unreasonable risk of injury associated with such product" and that its promulgation is in the public interest.[12] 15 U.S.C. § 2058(c)(2)(A)–(B) (1974). Any requirement set out in a consumer product safety standard is required to be "reasonably necessary to prevent or reduce an unreasonable risk of injury associated with such product." 15 U.S.C. § 2056(a) (1979 Supp.).

■ There is no question that the interests which are to be served by the Act are those of the consuming public. The promulgation of consumer product safety standards and the enforcement of the standards and other provisions of the Act are clearly

means designed by Congress to be undertaken to protect the interests of the consuming public in safe consumer products. These conclusions are inescapable in light of the Congressional findings and declaration of purpose and the remaining provisions of the Act. Thus, although a manufacturer such as Plaintiff could theoretically be found to come within the letter of the statutory term "interested person" the Court finds that it does not come within the statute[13] because it is not within the spirit of the Act or the intention of Congress. *See e. g., Muniz v. Hoffman,* 422 U.S. 454, 469, 95 S.Ct. 2178, 2186, 45 L.Ed.2d 319 (1975); *Philbrook v. Glodgett,* 421 U.S. 707, 714, 95 S.Ct. 1893, 1898, 44 L.Ed.2d 525 (1975); *Church of Holy Trinity v. United States,* 143 U.S. 457, 459–60, 12 S.Ct. 511, 512, 36 L.Ed. 226 (1892). A manufacturer's interest in bringing a private enforcement action would be one of retaining its competitive position and ensuring that others comply with the standards with which it has complied. While the interest may be a legitimate one it is not an interest promoted by the Act in general and especially § 24 of the Act granting any "interested person" the right to bring private enforcement actions.[14]

■ The Court recognizes in making this finding that there are other statutory provi-

---

**8.** 15 U.S.C. § 2054(b)(2) (1974).

**9.** 15 U.S.C. § 2054(b)(1) (1974).

**10.** 15 U.S.C. § 2056 (1979 Supp.).

**11.** 15 U.S.C. § 2071 (1979 Supp.). Additional powers consistent with the purposes of the Act are set forth in 15 U.S.C. § 2054(b)(3) (1974) (providing training and assistance); 15 U.S.C. § 2057 (1974) (declaring products banned hazardous products); 15 U.S.C. § 2061 (1974) (filing actions for seizure of imminently hazardous consumer products); 15 U.S.C. § 2063(b)–(c) (1974) (prescribing reasonable testing programs for consumer products subject to standards and requiring the use of labeling); 15 U.S.C. § 2064 (1974 & 1979 Supp.) (requiring notice of product defects and repair, replacement, refund, or action plan); 15 U.S.C. § 2065 (1979 Supp.) (providing for inspection); and 15 U.S.C. § 2076 (1974 & 1979 Supp.) (setting forth additional functions and powers).

**12.** The Commission's findings with respect to the consumer product safety standard for architectural glazing materials are set forth in 16 CFR § 1201.1(d) (1979).

**13.** An examination of the legislative history on this point proved inconclusive.

**14.** The effects of a consumer product safety rule upon manufacturers are taken into account; prior to promulgating a consumer product safety rule the Commission is required to make findings for inclusion in the rule with respect to "any means of achieving the objective of the order while minimizing adverse effects on competition or disruption or dislocation of manufacturing and other commercial practices consistent with the public health and safety." 15 U.S.C. § 2058(c)(1)(D) (1974). These findings are contained in the architectural glazing materials standard at 16 CFR § 1201.1(d)(4) (1979).

sions in the Act which give "interested persons" certain rights.[15] It also recognizes that under some of these provisions a manufacturer might be an "interested person" for the purposes of the statute.[16] A finding that a manufacturer is an "interested person" for the purposes of other statutory provisions would not, however, necessarily shed any light on whether a manufacturer is an "interested person" for the purposes of § 24 of the Act. While in some instances a word or term used in one provision of an Act will be presumed to have the same meaning when it is used in another provision of the same Act, in this case such a presumption is not valid. The term "interested person" must be defined by its context with regard given to the interests to be served by the statutory provision consistent with the legislation as a whole. When the purpose to be served by the provision is to enforce the consumer product safety rules so that the goals of the legislation will not be frustrated, and the goals of the legislation are shown to be ones of consumer protection by means of regulation, the interest held by a manufacturer in retaining its economic position in the marketplace is not sufficient to bring it within the zone of interests contemplated by the statute, and precludes it from attaining the status of an "interested person" under § 24 of the Act.

■ Turning to the portion of Plaintiff's prayer seeking the imposition of a fine against each Defendant of two thousand dollars for each violation of the applicable consumer product safety standard, the Court finds that it was not the intent of Congress to permit private parties to seek the imposition of this statutory penalty. Section 20 of the Act,[17] authorizing the imposition of civil penalties, provides for a civil penalty not to exceed two thousand dollars for each violation of § 19 of the Act,[18] which among other prohibitions prohibits the manufacture, distribution, or sale of any consumer product not in conformity with an applicable consumer product safety standard.[19] A ceiling of five hundred thousand dollars is set out as the maximum civil penalty for any related series of violations. 15 U.S.C. § 2069(a)(1) (1979 Supp.).

Plaintiff concedes that any penalty imposed would be one which would financially benefit the government rather than the Plaintiff. The penalty is clearly one to be sought by the government rather than a private party. This finding is supported not only by the fact that it is a penalty payable to the government but also by the provision authorizing the Commission to compromise any civil penalty. 15 U.S.C.

**15.** For example, see 15 U.S.C. § 2056(d)(3)(B) (1974); 15 U.S.C. § 2058(a)(2) (1979 Supp.); 15 U.S.C. § 2059(a) (1974); 15 U.S.C. § 2064(c) (1974).

**16.** This Court does not attempt to ascertain which provisions would provide a result different from that reached in this case as such a task would take the Court beyond the scope of its present inquiry and is unnecessary in light of the Court's analysis. It is clear from a careful reading of the Act, however, that the interests which are reflected by some of the provisions differ and that several of the provisions do ensure that the interests of the entities regulated by the Act are not ignored; the interests of the regulated entities are weighted, however, against the heavily favored interests of the consuming public. In *Laminators Safety Glass Ass'n v. Consumer Product Safety Commission*, 188 U.S.App.D.C. 164, 578 F.2d 406 (1978), the Court of Appeals for the District of Columbia Circuit addressed the question of whether a manufacturer was an "interested person" for the purposes of § 10 of the Act which provides: "Any interested person, in-

cluding a consumer or consumer organization, may petition the Commission to commence a proceeding for the issuance, amendment, or revocation of a consumer product safety rule." 15 U.S.C. § 2059(a) (1974). The Court of Appeals found that the term "interested person" *as used in* § 10 of the Act includes "within its scope interested manufacturers who seek relief from a consumer product safety standard." 578 F.2d at 411. Thus, for the purposes of petitioning the Commission for the amendment or revocation of a consumer safety product rule, a manufacturer is considered an "interested person". It is worth noting, however, that although the interests of the manufacturer have been taken into account, the interests of the consuming public are still paramount. See 15 U.S.C. § 2058(e) (1974).

**17.** 15 U.S.C. § 2069 (1974 & 1979 Supp.).

**18.** 15 U.S.C. § 2068 (1974 & 1979 Supp.).

**19.** 15 U.S.C. § 2068(a)(1) (1979 Supp.).

§ 2069(b) (1974). In addition, provisions for suits brought by private parties and the remedies available are separately set forth in §§ 23[20] and 24 of the Act. Private remedies are limited to equitable relief and the recovery of damages. *Id.*

In accordance with the foregoing opinion and the Court's findings that the Plaintiff cannot bring a private enforcement action under § 24 of the Act, nor seek the imposition of a statutory penalty pursuant to § 20 of the Act, the Defendants' Motion to Dismiss Plaintiff's Complaint is hereby GRANTED.

---

**20.** 15 U.S.C. § 2072 (1979 Supp.) (suits for damages by injured persons).