# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued May 10, 2021          Decided July 2, 2021

No. 21-1071

LISA MILICE,
PETITIONER

v.

CONSUMER PRODUCT SAFETY COMMISSION,
RESPONDENT

———

On Petition for Review of an Order
of the Consumer Products Safety Commission

———

*Jared McClain* argued the cause for Milice. With him on
the briefs was *Peter L. Strauss*.

*Courtney L. Dixon*, Attorney, U.S. Department of Justice,
argued the cause for respondent. With her on the brief were
*Ethan P. Davis*, Acting Assistant Attorney General at the time
the brief was filed, *Scott R. Mcintosh*, Attorney, and *J. Gibson
Mullan*, then-General Counsel, Consumer Product Safety
Commission.

*Kelly M. Klaus, Rose Leda Ehler, Rachel G. Miller-
Ziegler,* and *J. Blake Cunningham* were on the brief for *amici
curiae* American National Standards Institute, et al. in support
of respondent. *Gary D. Sesser* entered an appearance.

*J. Kevin Fee* and *Michael E. Kenneally* were on the brief for *amicus curiae* American Society for Testing and Materials in support of respondent.

*Nina A. Mendelson*, *Allison M. Zieve,* and *Adina H. Rosenbaum* were on the brief for *amici curiae* Administrative Law Professors in support of neither party.

Before: ROGERS, MILLETT and WILKINS, *Circuit Judges*.

Opinion for the Court by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: This case comes to the court as a broadside attack on the practice of federal agencies incorporating privately drafted technical standards into their regulations by reference. In September 2019, the Consumer Product Safety Commission revised its safety standard for infant bath seats, stating: "Each infant bath seat shall comply with all applicable provisions of ASTM F1967–19, Standard Consumer Safety Specification for Infant Bath Seats." *Revisions to Safety Standard for Infant Bath Seats*, 84 Fed. Reg. 49,435, 49,439 (Sept. 20, 2019) (the "2019 Rule"). When Lisa Milice, a then-expectant mother, and her counsel contacted Commission staff about inspecting the ASTM standard, they were told they would have to purchase the standard from its developer. Milice eventually challenged the 2019 Rule on the grounds that it violated the Administrative Procedure Act and the First and Fifth Amendments to the U.S. Constitution because its content is not freely available to the public. The court is unable to address Milice's arguments, however, because her petition for review is untimely.

**I.**

The Consumer Product Safety Improvement Act of 2008, Pub. L. No. 110-314, 122 Stat. 3016, was enacted to, among other things, "establish consumer product safety standards and other safety requirements for children's products," H.R. Rep. No. 110-787, at 1 (2008) (Conf. Rep.). The Act requires the Commission to "consult[] with representatives of consumer groups, juvenile product manufacturers, and independent child product engineers and experts" regarding "the effectiveness of any voluntary consumer product safety standards for durable infant or toddler products." 15 U.S.C. § 2056a(b)(1)(A). After consultation, the Commission is to "promulgate consumer product safety standards" for such products on an expedited basis that were either "substantially the same as" the voluntary standards or "more stringent" if "more stringent standards would further reduce the risk of injury associated with such products." *Id.* § 2056a(b)(1)(B), (b)(2).

The Act includes a procedure for revising the Commission's durable infant and toddler product standards. If the Commission's standard "is based, in whole or in part, on a voluntary standard," the Commission must alert the developer and that organization must inform the Commission of any revisions. *Id*. § 2056a(b)(4)(A)-(B). The revised voluntary standard "shall be considered to be a consumer product safety standard issued by the Commission" effective 180 days after the Commission is notified, "unless . . . the Commission notifies the organization that it has determined that the proposed revision does not improve the safety of the consumer product covered by the standard." *Id.* § 2056a(b)(4)(B). Thus, the revised voluntary standard replaces the Commission's standard by operation of law unless the Commission affirmatively rejects it.

In 2009, the Commission proposed a safety standard for infant bath seats that was "substantially the same as a voluntary standard developed by ASTM International." Safety Standard for Infant Bath Seats, 74 Fed. Reg. 45,719, 45,719 (Sept. 3, 2009). Following an opportunity for comment, the Commission published a rule that was "almost the same as the proposed standard." *Safety Standard for Infant Bath Seats: Final Rule*, 75 Fed. Reg. 31,691, 31,691 (June 4, 2010). ASTM's standard was incorporated by reference: "[E]ach infant bath seat shall comply with all applicable provisions of ASTM F 1967–08a, Standard Consumer Safety Specification for Infant Bath Seats, approved November 1, 2008." *Id.* at 31,698. Interested persons could purchase a copy of the standard from ASTM or inspect a copy on a read-only basis at the Commission's Office in Bethesda, Maryland or at the National Archives in Washington, D.C. *Id.*

ASTM revised its standard for infant bath seats in 2012 and 2013, and each time the Commission published notices in the Federal Register incorporating the revised standards by reference. *See* 77 Fed. Reg. 45,242 (July 31, 2012); 78 Fed. Reg. 73,692 (Dec. 9, 2013). When ASTM notified the Commission in June 2019 that it had again updated its infant bath seat standard, the Commission published a notice in the Federal Register on September 20, 2019, summarizing ASTM's changes. 84 Fed. Reg. at 49,436–37. Finding ASTM's changes had either a positive or neutral impact on product safety, *id.* at 49,436, the Commission announced that the revision would take effect December 22, 2019, unless "significant" adverse comments were received within thirty days, *id.* at 49,439. In that event, the Commission would withdraw the 2019 Rule before its effective date and publish notice in the Federal Register. *Id.* at 49,435. As before, the Commission incorporated ASTM's standard by reference: "Each infant bath seat shall comply with all applicable

provisions of ASTM F1967–19, Standard Consumer Safety Specification for Infant Bath Seats, approved May 1, 2019." *Id.* at 49,439. And as before, the Director of the Federal Register had approved the incorporation by reference as conforming to the requirements of Section 552(a)(1) of the Administrative Procedure Act ("APA"). *Id.* Again, the standard could be purchased from ASTM or viewed on a read-only basis at the Commission's Bethesda headquarters or the National Archives. *Id.*

On October 21, 2019, the New Civil Liberties Alliance ("NCLA") wrote to the Commission what it "intended to serve as [] significant adverse commentary." Letter of Caleb Kruckenberg, Litigation Counsel, NCLA, to Robert S. Adler, Act'g Chairm'n, CPSC, at 2 (Oct. 21, 2019). NCLA stated that the 2019 Rule was unconstitutional and needed to be withdrawn because the incorporation of ASTM's standards by reference "hid[] the binding law behind a paywall" in violation of the Fifth and Fourteenth Amendments. *Id.* at 1, 4–7. NCLA suggested that the Commission "could avoid these problems by simply publishing the legal standard instead of incorporating it by reference," noting that, in its view, the Commission "has no obligation to adopt . . . ASTM standards," and "has the option of reproducing those standards in full in the Code of Federal Regulations." *Id.* at 7.

The Commission responded by letter of February 6, 2020, stating that it did not consider NCLA's letter a significant adverse comment because NCLA's constitutional concerns did not implicate product safety, and that the 2019 Rule had taken effect on December 22, 2019. Letter from J. Gibson Mullan, Gen'l Counsel, CPSC, to Caleb Kruckenberg, Litigation Counsel, NCLA (Feb. 6, 2020). The Commission advised that because the decision whether to publish the text of ASTM's standards in the Federal Register is "limited both by [its] own

organic statute and by the Office of the Federal Register," *id.* at 1, it "does not have the option of publishing the revised mandatory standard instead of incorporating it by reference," *id.* at 3. First, its authority to veto a change to a voluntary standard that it had previously adopted is "limit[ed]" by Congress to "reject[ing] the revision only if it determines that the change does not improve safety." *Id.* at 2. Second, "nearly all voluntary standards [are] protected by copyright," which the Commission can neither ignore nor publish without permission of the copyright holder. *Id.* at 2–3.

On February 20, 2020, Milice, an expectant mother, filed a petition for review of the 2019 Rule in the United States Court of Appeals for the Third Circuit, invoking 15 U.S.C. § 2060(a). Section 2060(g)(1)(c), however, provides an expedited procedure for "any standard promulgated by the Commission under section 20656a of this title (relating to durable infant and toddler products)":

> Not later than 60 days after the promulgation, by the Commission, of a rule or standard to which this subsection applies, any person adversely affected . . . may file a petition with the United States Court of Appeals for the District of Columbia Circuit for judicial review of such rule.

15 U.S.C. § 2060(g)(2). By Order of February 18, 2021, the Third Circuit transferred the case to this court.

The parties' briefs focus on the lawfulness of the 2019 Rule. In response to Milice's objections relating to the availability of ASTM's standard in view of its incorporation by reference, the Commission maintains that the Rule complies with the APA's incorporation by reference requirements and presents no constitutional concerns, noting that there are three

ways to access ASTM's infant bath seat standard: (1) inspect it in-person at the Commission's reading room in Bethesda, or at the Office of the Federal Register in Washington D.C.; (2) purchase the standard for $56 from ASTM; or (3) view the standard on ASTM's website in read-only format (*i.e.*, the text on the webpage cannot be copied or printed). Resp't's Br. 13–14. Milice responds that her only interest is to ensure that the Commission provides public access to its binding standards. The frustrated efforts experienced by Milice and NCLA to view ASTM's standard in the Commission's Bethesda reading room, *see* Lisa Milice Decl. ¶¶ 6–7 (May 11, 2020); Jared McClain, Esq., Decl. ¶¶ 4–9 (May 11, 2020), illustrate one limitation to the incorporation by reference format, and she maintains that the Commission and ASTM "remain free to contemplate a licensing arrangement, litigate ASTM's copyright claim, or negotiate compensation for ASTM's copyright," Reply Br. 19.

A month before the scheduled oral argument, amicus ASTM notified the court that it may lack jurisdiction over the petition for review because it was filed more than 60 days after the 2019 Rule was published in the Federal Register. Milice responded through NCLA counsel that her petition is properly before the court because it was filed within 60 days of the Commission's rejection of NCLA's comment or, alternatively, the effective date of the 2019 Rule. The court directed the parties to be prepared at oral argument to address the petition's timeliness. *Per Curiam* Order (May 3, 2021).

## II.

Notwithstanding the parties' legal dispute over the availability of ASTM's standard to the public, the court must first determine whether it has subject matter jurisdiction to consider Milice's petition for review. *See Arbaugh v. Y&H*

*Corp.*, 546 U.S. 500, 514 (2006); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998).

Section 2060(g)(2) of Title 15 of the U. S. Code provides that a petition for review of a consumer product safety standard for infant and toddler products must be filed "[n]ot later than 60 days after [its] promulgation, by the Commission." In *Laminators Safety Glass Association v. Consumer Product Safety Commission*, 578 F.2d 406 (D.C. Cir. 1978), the court held that the petitioner's failure to comply with an identically worded filing deadline under the Consumer Product Safety Act "depriv[ed] this Court of jurisdiction," *id.* at 408. It follows that meeting Section 2060(g)(2)'s filing deadline is a jurisdictional prerequisite to suit. Notably, Milice has never argued to the contrary, thereby forfeiting any claim that Section 2060(g)(2) is not a jurisdictional bar. *See Int'l Longshore & Warehouse Union v. NLRB*, 971 F.3d 356, 363 (D.C. Cir. 2020). Here, the 60-day period began on September 20, 2019, when the Commission published the 2019 Rule in the Federal Register. Where "the agency does not define the term by regulation and if the statute supports (or at least does not foreclose) the interpretation, 'promulgation' is accorded its 'ordinary meaning' — i.e., publication in the Federal Register." *Horsehead Resource Dev. Co., Inc. v. EPA*, 130 F.3d 1090, 1093 (D.C. Cir. 1997). Milice, however, did not file her petition until February 20, 2020 — 153 days after the 2019 Rule's promulgation. Her petition is therefore time barred and must be dismissed.

Milice's efforts to render her tardy petition timely are unpersuasive. Relying on *Bennett v. Spear*, 520 U.S. 154 (1997), she maintains that the 2019 Rule was not final agency action subject to challenge until December 22, 2019, because the Commission stated in the preamble that it would withdraw the 2019 Rule before its effective date if it received significant

adverse comment. Oral Arg. Rec. 1:30–3:00, 9:00–9:51. Milice's reliance on *Bennett* is misplaced. "Agency actions are final if two independent conditions are met: (1) the action 'marks the consummation of the agency's decisionmaking process' and is not 'of a merely tentative or interlocutory nature;' and (2) it is an action 'by which rights or obligations have been determined, or from which legal consequences will flow.'" *Soundboard Ass'n v. FTC*, 888 F.3d 1261, 1267 (D.C. Cir. 2018) (alteration adopted) (quoting *Bennett*, 520 U.S. at 177–78). The 2019 Rule satisfies both conditions.

Far from speaking tentatively, the Commission stated in the preamble of the 2019 Rule that "the changes made in ASTM F1967–19 will either improve the safety of infant bath seats or are neutral with respect to safety," and "[t]herefore, the Commission will allow the revised voluntary standard to become effective as a mandatory consumer product safety standard under the statute." 84 Fed. Reg. at 49,436. Indeed, the Commission designated the revised infant bath seat standard as a "direct final rule." *Id*. at 49,435. Nor is there any question of the 2019 Rule's legal effect: a person who knowingly makes, distributes, or sells a product that does not conform to the Commission's standards faces potential civil and criminal penalties under 15 U.S.C. §§ 2068–70. The 2019 Rule was final agency action in September 2019, notwithstanding the possibility that the Commission might reconsider and change its standard in the future. *See Nat'l Envtl. Dev. Assoc.'s Clean Air Project v. EPA*, 752 F.3d 999, 1006–07 (D.C. Cir. 2014).

Alternatively, Milice maintains that the 2019 Rule was not final agency action under the incurable-prematurity doctrine until the Commission rejected NCLA's comment on February 6, 2020. Because "finality with respect to agency action is a party-based concept," *Bellsouth Corp. v. FCC*, 17 F.3d 1487,

1489 (D.C. Cir. 1994) (quoting *United Transp. Union v. ICC*, 871 F.2d 1114, 1118 (D.C. Cir. 1989)), the "reviewability of an agency action turns in part on the conduct of the petitioning parties," *ICG Concerned Workers Ass'n v. United States*, 888 F.2d 1455, 1457 (D.C. Cir. 1989). If a party asks an agency to reconsider its decision, the request "renders [the] agency's otherwise final action non-final with respect to the requesting party." *Clifton Power Corp. v. FERC*, 294 F.3d 108, 110–11 (D.C. Cir. 2002). As a result, a petition filed by that party while its request remains pending is "incurably premature." *Id.* By contrast, "[i]f a party has sought only judicial review, the agency action can be deemed final and hence reviewable as to that party, regardless of whether other parties have moved for administrative reconsideration." *ICG Concerned Workers Ass'n*, 888 F.2d at 1457–58; *see, e.g.*, *Petrol. Commc'ns, Inc. v. FCC*, 22 F.3d 1164, 1171 n.6 (D.C. Cir. 1994). Even assuming the incurable prematurity doctrine applies in this context as Milice supposes, it is of no help to her because she never asked the Commission to reconsider the 2019 Rule, nor did NCLA purport to write its October 21, 2019, comment letter on her behalf. Oral Arg. Rec. 4:25–5:08.

Accordingly, because Milice's petition for review of the 2019 Rule is untimely, the court lacks jurisdiction and must dismiss her petition.